## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                                                                                          No. CR 03-2072 JB

ANTONIUS MARIA HEIJNEN,

       Defendant.

## **MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the Defendant's Motion for entry of judgment of acquittal (Also called judgment notwithstanding the verdict [Fed R Cr P 29(c)], filed March 18, 2005 (Doc. 139). The primary issue is whether the Court should set aside the jury verdict for lack of evidence. Because the Court concludes that the United States submitted sufficient evidence of Antonius Maria Heijnen's intent to defraud, the Court will deny his motion.

## **PROCEDURAL BACKGROUND**

At Heijnen's insistence, the Court allowed him to proceed pro se. The jury heard approximately three days of testimony. In the course of trial, the Court held that it would submit to the jury the factual question whether the offense affected a financial institution only if the record supported a finding of potential or actual harm to the financial institution. While the United States disagreed with the Court's construction of the statute, the United States agreed that it had not introduced evidence of actual or potential harm to a financial institution. The United States agreed that the Court should not submit the question whether the wire fraud affected a financial institution to the jury.

At trial, the jury, within hours of retiring to deliberate, returned a verdict of guilty on all counts of the Superseding Indictment. Heijnen moves the Court for his acquittal. The United States asks the Court to deny Heijnen's motion without a hearing.

## LAW REGARDING WIRE FRAUD

18 U.S.C § 1343 provides:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1343. Thus, a jury finding that the wire fraud "affected a financial institution" would increase the statutory maximum term of imprisonment from five years to thirty years.

## ANALYSIS

Heijnen's motion revisits arguments that he made in his summation at trial. Heijnen argues now, as he argued then, that there was insufficient evidence in the record to support a jury verdict. To reach the verdict that it did, the jury thought otherwise. The Court will not set aside the jury's determinations of fact, which the evidence at trial supported.

### I. THERE IS SUFFICIENT EVIDENCE IN THE RECORD TO SUPPORT THE JURY'S VERDICT.

Heijnen's principal contention in this motion, as it was at trial, is that there was no evidence of intent to defraud. The Court disagrees. The verdict has adequate support in the evidence that the parties introduced in the course of the trial.

The record contains evidence that the bank guarantees which Heijnen offered to the Carmelite

Sisters of the Sacred Heart cannot be bought and sold, and that such guarantees have no intrinsic value. The jury was entitled to conclude that Heijnen's solicitation of $500,000.00 for the represented purpose of buying bank guarantees was fraudulent in intent.

Moreover, there is evidence in the record that Heijnen spent a significant fraction of the money that he obtained from the Carmelites for purposes unrelated to the purchase of bank guarantees. The United States showed that he used some of the Carmelites' money to pay others, whom the jury could conclude were participants in a Ponzi scheme. There was evidence that Heijnen used the Carmelites' money to purchase goods for his own use.

The jury was entitled to conclude that the relatively small amount of money which Heijnen wired to Germany was insufficient to make good on his agreement with the Carmelites. There was sufficient evidence for the jury to conclude that Heijnen had neither the ability nor the intent to comply with the contract for the sale of bank instruments. Accordingly, the evidence at trial was sufficient to sustain a conviction on the wire fraud charge and the remaining counts of the Superceding Indictment.

## II. "AFFECTING A FINANCIAL INSTITUTION" IS NOT AN ELEMENT OF WIRE FRAUD.

Heijnen also argues that the Court should vacate the jury's verdict of guilty as to the Superseding Indictment's wire fraud count on the grounds that this charge alleged that the transmission of the $500,000.00 from the Carmelites "did thereby affect a financial institution" and that the United States did not introduce evidence of any harm to a financial institution. Heijnen appears to argue that "affect[ing] a financial institution" is an element of wire fraud. He contends that, in the absence of evidence supporting harm to a financial institution and of a jury finding of such

actual or potential harm, he is entitled to a judgment of acquittal on this count. Heijnen is mistaken.

The Court properly instructed the jury as to the elements of wire fraud, which do not include having an effect upon a financial institution. Rather, affecting a financial institution is a fact giving rise to a possible increased sentence, raising the statutory maximum term of imprisonment. It is not an element of the offense. Because "affecting a financial institution" is not an element of wire fraud, the absence of evidence of actual or potential harm to a financial institution does not entitle Heijnen to a judgment of acquittal.

## III. IT IS THE JURY'S PROVINCE TO DETERMINE WHAT WITNESSES TO BELIEVE.

Heijnen argues that various witnesses who testified at trial were not worthy of belief. Heijnen placed his credibility before the jury as well when he decided to testify in his defense. The jury was entitled to disbelieve Heijnen and to credit the United States' witnesses.

Because Heijnen did not make a motion for acquittal at the close of the United States' case, but waited to do so until after the jury returned its verdict, the Court may consider evidence submitted during the defense case in determining whether the record as a whole supports the jury verdict. While it remained the United States' burden to prove Heijnen's guilt beyond a reasonable doubt, the jury was entitled to consider Heijnen's credibility when it reviewed the evidence and returned its verdict of guilty. The Court may take the jury's assessment of his credibility into account when ruling upon this motion.

## IV. HEIJNEN DID NOT PRESERVE MOST OR ALL OF HIS OBJECTIONS TO JURORS.

Heijnen makes various complaints about the jurors seated for his trial, alleging that they were not competent to serve. He was entitled to pursue these issues at voir dire and move to strike any

juror he believed not fit to serve. Heijnen is apparently now contending that he did not do so. He has accordingly waived these complaints.

Heijnen contends that the jurors were either not truthful or not attentive, and were prejudiced against him before the trial started. Heijnen does not identify a specific juror or jurors whom he has in mind. Hence, it is difficult to deal with Heijnen's concerns.

Heijnen notes that, when he asked voir dire questions, he asked if there was anyone who did not live on federal land. There was no response. Heijnen then asked whether all the jurors lived on federal land. Again, there was no response.

Heijnen represents that he has the jurors' addresses.[1] He knows that they do not all live on federal land. Heijnen doubts that even one juror lives on federal land.

Heijnen suggests that there could be only three reasons for the non-response: (i) the jurors were not paying attention to what Heijnen said; (ii) the jurors were prejudiced against Heijnen; and (iii) they were not truthful. There is another possibility, however. The jurors may have been confused by the question or thought that Heijnen was asking something different. They may have thought that he was asking whether they lived in the United States. In any case, Heijnen has not shown that the jurors should not have been seated. If any specific jurors should not have been seated,

---

[1] The Court is not certain that is the case. Ann Steinmetz, Heijnen's standby counsel, received a list of the jurors that included their addresses. At a motion hearing on January 31, 2005, however, the United States questioned whether Heijnen should be allowed to have the juror information at the detention facility in which he is housed. See Transcript of Hearing at 26:3-13, January 31, 2005. Ms. Steinmetz represented that she would provide Heijnen a list of the jurors that did not include their addresses. See id. at 26:16-27:12.

The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version. Any finalized transcript may contain slightly different page and/or line numbers.

Heijnen should have made that objection before trial, not now.

Heijnen also contends that the jury was not competent to determine the facts because the case involved complex issues and the Court declared the case complex. Heijnen questions how a jury could deliberate for only 1½ hours on these complex matters. But the Court's designation of the case as complex is mostly for Speedy Trial Act purposes and to assist the CJA lawyers in getting paid. The designation is not an indication that the issues are too difficult for a jury or a prediction how long they must deliberate. While each case has its challenges, this case did not present the jury with significantly more, in quantity or kind, than other criminal cases. Heijnen has not shown that any juror, or the jury as a whole, was incompetent for the task given them.

## V.   HEIJNEN'S ISSUES WITH THE LEGAL INSTRUCTIONS ARE ISSUES FOR AN APPEAL.

Heijnen also raises a number of issues pertaining to the jury charge, to the Court's jurisdiction, and to the admissibility of evidence. These are not proper grounds for a motion for judgment of acquittal. These are legal issues upon which the Court has already ruled. If Heijnen wants a court to revisit these issues, he will have the right to so request upon an appeal.

## VI.   HEIJNEN RECEIVED A FAIR TRIAL.

Heijnen alleges that his trial was a farce. While the Court strongly preferred that Heijnen allow able counsel to represent him, the trial was otherwise similar to other trials. The Court went to considerable effort to afford Heijnen a fair trial. While the arguments and examinations on both sides were vigorous, the trial was conducted with proper decorum. The Court granted Heijnen leeway to present his defense, ever mindful that he was proceeding pro se. Heijnen has not presented an adequate reason to disturb the jury's verdict.

**IT IS ORDERED** that the Defendant's Motion for Entry of Judgment of Acquittal (also called judgment notwithstanding the verdict [Fed R Cr P 29(c)] is denied.

_____
UNITED STATES DISTRICT JUDGE

David C. Iglesias
  United States Attorney
Jonathon M. Gerson
Stephen R. Kotz
  Assistant United States Attorneys
Albuquerque, New Mexico

    *Attorneys for the United States*

Antonius Maria Heijnen
Torrence County Detention Center
Estancia, New Mexico

    *Defendant Pro Se*

Ann Steinmetz
Albuquerque, New Mexico

    *Standby counsel for Defendant Antonius Maria Heijnen*