IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                                              No. CR 03-2072 JB

ANTONIUS MARIA HEIJNEN,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Motion for a new trial and change of venue, filed July 14, 2005 (Doc. 180). The Court held a hearing on this motion on August 12, 2005. The primary issue is whether the Court should grant Defendant Antonius Maria Heijnen a new trial. Because Heijnen has not presented a good reason for a new trial, or for change of venue, the Court will deny both his motions.

## PROCEDURAL BACKGROUND

Before trial, because of the particular legal arguments that Heijnen raised, the Court did not learn as much about the facts and charges as it normally does in a criminal case. The Court learned most of what it knows about the facts and evidence for the first time at trial. For example, before trial, Heijnen advanced the argument that this Court was a "legislative court" and that he should be tried instead in an Article III court. See Second Motion to Dismiss for Lack of Jurisdiction, filed January 25, 2005 (Doc. 66). The Court rejected this argument. See Order, filed February 16, 2005 (Doc. 90).

At one of the pre-trial hearings, someone mentioned Hope Christian School. Some of the

victims in this case are associated with Hope. The Judge's daughter attended Hope and graduated in 2003.

The Court immediately asked whether Hope itself had been a victim and asked the United States to list all of the people involved in the case who were associated with Hope. See Transcript of Hearing at 45:13-49:7 (taken February 16, 2005).[1] The United States stated that Hope had not lost any money and gave the Court four names: (i) Carl Bennett; (ii) Sharon L. Powell; (iii) Phil Oppendahl; and (iv) Daniel Merritt. See id. at 48:17-50:2. Judge Browning went home and asked his wife about these names; neither the Judge nor his wife remembered these people. See Letter from James O. Browning to Jonathon M. Gerson, Stephen R. Kotz, Antonius Maria Heijnen, and Ann Steinmetz at 2 (July 5, 2005) ("Letter from James O. Browning").

Before trial, the Court also reviewed the witness lists. See id. Steve and Sherrie Clark were on Heijnen's witness list. See id. The Court did not recognize their names at that time. See id.

At trial, it became clear that there were more people associated with Hope than the four individuals identified by the United States. See id. The Clarks were not called as witnesses. The Court did not recognize or remember any of the witnesses who may have been associated with the school. See id. The Court has acknowledged that there is a possibility that the Judge may have met some of the witnesses or they may know his daughter, see id., but the Court does not remember any contact. The Judge has not discussed or reviewed the actual witness lists with his wife or daughter.[2]

---

[1] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version. Any finalized transcript may contain slightly different page and/or line numbers.

[2] At the hearing on the motion, the Court asked the parties and counsel whether the Judge should discuss the witnesses or victims in the case with the Judge's wife or daughter. No one suggested that he should, and the attorneys stated that he should not. See Transcript of Hearing taken August, 12, 2005.

At trial, the Court saw the Clarks' names in an exhibit, which associated them with the Clarks' daughter. See id. The Judge believes that the Clarks' daughter was a close friend of his daughter while they were in school at Hope. See id. The Clarks did not testify at trial, but there was testimony that the Clark's deposited $95,000 in an account and that they were investors. See Transcript of Hearing at 145:22-146:3 (taken March 9, 2005). The Court did not know if they were victims, or rather, some of those that had been paid before the ponzi scheme collapsed.

The Judge is uncertain what the status of his daughter's and the Clarks' daughters' relationship is, and the Judge has not seen the Clarks' daughter in probably over a year. See Letter from James O. Browning at 2. The Judge has not discussed the Clarks' involvement in this case, or their daughter, with his daughter. The Judge does not have a close relationship with the Clarks.

After trial, in a motion for acquittal, filed on March 18, 2005 (Doc. 139), Heijnen argued that there was not sufficient evidence on the record to convict him. He argued that the Carmelite Sisters demand guarantees can be sold in a secondary market independent of an underlying contract. The Court denied this motion on September 22, 2005. See Order.

After Probation issued the Presentence Report, the Court recognized some names entitled to restitution. See Letter from James O. Browning at 1. The Court brought that fact to the parties' attention. See id. at 1-2. The Clarks' daughter is not listed as a victim, but the Clarks are. In addition, Richard and Patricia Crow are listed as victims in the presentence report. The Judge believes that his daughter knew, and that he may have met, the Crows' daughter and perhaps her parents. See id. at 2. He also believes that Mr. Kyle Skartwood, also listed as a victim, was his daughter's physical education teacher, although he does not believe he is at Hope now. And because

the Judge has not shown the restitution list to his wife or daughter, there may be other persons that the Judge has met or knows, but does not recognize or remember their names.

The Judge does not know anything about any victims' claims except what he learned at trial. See id.  The Judge has not spoken to these people about this case.  See id.  The Judge has not mentioned to his daughter that this case was pending before him.  See id.  The Judge has not knowingly spoken to any of these people about anything while this case was active before it.[3]

In his July 5, 2005, letter, the Judge stated that he and his law clerks had reviewed the Code of Judicial Ethics, and did not believe that his recognition of names on the restitution list required him to recuse himself from the sentencing.  See id. at 1.  Specifically, the Judge stated that these possible and past contacts with some of the individuals did not prevent him from granting them restitution. See id. at 2.

The Judge did state, however, that it wanted everyone to be comfortable with his participation in the sentencing and award of restitution.  See id. at 1-2.  The Judge stated that, if anyone had any questions about the matters in its letter, he or she should let its Courtroom Deputy know, and that the Court and parties could perhaps have a conference.  See id. at 2.  The Judge stated that, while he now knew much about the case, he continued to believe that he could be fair and impartial at the

---

[3] The Court believes that, at some point after the trial, a friend from the Judge's church who works part-time at Hope and who had a daughter graduating this spring, asked him to be the possible graduation speaker at Hope.  The Judge declined because this case was still pending before it.  After parents associated with Hope appeared at trial, the Court did not want to have anyone speak to him about this case and create issues, or to create any appearance of partiality.  The friend asked for suggestions for a speaker, and the Court suggested the Honorable David Iglesias, United States Attorney, whom the Court had heard speak and believed might have young children attending Hope. The Court believes it suggested others as well.  The Judge did not attend the graduation or attend the graduation party for his friend's daughter to avoid anyone speaking to him about this case.  The Judge also did not attend any more of her basketball games for the same reason.

sentencing. See id. at 2. No one contacted the Court for a conference. Instead, the United States indicated to the Court's Courtroom Deputy that it saw no problem with Judge Browning presiding over the sentencing. Heijnen's stand-by-counsel has not indicated whether the Judge should not proceed over the sentencing.

### LAW REGARDING A NEW TRIAL BASED ON NEW EVIDENCE

> [W]hen a defendant brings a motion for new trial on the basis of newly discovered evidence, he is generally required to show: (1) the evidence was discovered after trial; (2) the failure to learn of the evidence was not caused by his own lack of diligence; (3) the new evidence is not merely impeaching; (4) the new evidence is material to the principal issues involved; and (5) the new evidence is of such a nature that in a new trial it would probably produce an acquittal.

United States v. Sinclair, 109 F.3d 1527, 1531 (10th Cir. 1997).

### LAW ON RECUSAL

28 U.S.C. § 455 provides that a judge shall disqualify himself or herself in any proceeding in which his or her impartiality might reasonably be questioned. The statute further provides, in relevant part, for disqualification where the judge has a personal bias or prejudice concerning a party. See id. § 455(b)(1). "[T]he judge is under a continuing duty to ask himself what a reasonable person, knowing all the relevant facts, would think about his impartiality." United States v. Hines, 696 F.2d 722, 728 (10th Cir. 1982). "On the other hand, a judge has as much an obligation not to recuse himself where there is no reason to do so as he does to recuse himself when the converse is true." United States of America v. Greenspan, 26 F.3d 1001, 1005 (10th Cir. 1994).

28 U.S.C. § 144 requires that a party demanding the recusal of a judge file an affidavit stating the reasons for the belief that bias or prejudice exists, and further requires a certificate from counsel

of record stating that the affidavit is made in good faith.[4]

## ANALYSIS

The record in this case establishes that the Court provided a considerate and fair forum for all of Heijnen's arguments. The transcript of the pretrial proceedings and trial in the criminal case show that the Court was careful to observe fairness towards Heijnen. The Court granted Heijnen considerable leeway during pre-trial proceedings and at trial, and allowed him to present all of his arguments in detail. Heijnen has not presented any sound reason that the Court should grant him a new trial and change venue.

### I.   THE COURT WILL NOT GRANT A NEW TRIAL THAT WILL TAKE PLACE IN ANOTHER ARTICLE III DISTRICT COURT.

While Heijnen mentions some new facts, his primary argument is one that he raised before trial in his Motion to Dismiss; Lack of Jurisdiction, filed January 25, 2005 (Doc. 66). Heijnen argues that a "constitutional Article III district court," rather than this Court, should hold a new trial. Heijnen contends that this Court is a "legislative court." There was no sound basis for the argument before trial. The Court denied this motion on February 16, 2005 (Doc. 90). There is no basis for Heijnen's assertion that this argument justifies a new trial in a different venue. The Court will deny this motion.

### II.   HEIJNEN'S NEW INFORMATION DOES NOT JUSTIFY A NEW TRIAL.

While, in his motion, Heijnen contends that new information has revealed a few facts, he does not expressly ask for a new trial because of them. Nevertheless, reading his motion liberally with his objections to the presentence report, the Court will construe it as also based on these facts as well

---

[4] Heijnen did not comply with 28 U.S.C. § 144. He neither filed an affidavit stating the reasons for the belief that bias or prejudice exists, nor did he give a certificate stating that the affidavit was made in good faith. Moreover, he did not state that he believed the Judge had a bias or prejudice, but rather, he believed there was a "(potential) conflict of interest."

as his old legislative court argument. Neither fact, however, justifies a new trial.

### A. THERE WAS SUFFICIENT EVIDENCE THAT THE BANK GUARANTEES THAT HE SOLD WERE WORTHLESS

Heijnen notes that his conviction was based on two facts. First, he states that the Court must have found that demand guarantees can not be bought or sold and have no intrinsic value. Heijnen states that new information shows that those demand guarantees can be bought and sold, and act independent of any other commercial transactions. Second, Heijnen notes that the Court found his conviction is based on the assumption that $150,000 would not be enough to secure a demand guarantee with face value of $700,000. Heijnen contends that the evidence shows that generally 2-3% is sufficient. Heijnen attaches part of the "new information."

Although he does not expressly say so, Heijnen appears to be suggesting that he is entitled to a new trial because he sold the Carmelite Sisters "demand guarantees," which can be sold in the secondary market independent of an underlying contract. He has submitted an article as an attachment, which talks about demand guarantees. This is not new evidence. The Court has already denied a motion to dismiss based on a similar argument. Heijnen is attempting to substitute the term "demand guarantee" for bank guarantee. There is sufficient evidence on the record that Heijnen promised a different financial instrument – bank guarantee -- to the Carmelite Sisters. There is also sufficient evidence that the bank guarantee was worthless. Heijnen contends that he has produced "new evidence" sufficient to require a new trial. The factors in United States v. Sinclair, 109 F.3d at 1531 are not met. Heijnen does not put forth anything to show that the evidence was discovered after trial or the failure to learn of the evidence was not caused by his own lack of diligence. The new information seems to be merely supplemental to Heijnen's previous argument concerning "demand

notes." The Court finds that the new evidence is not of "such a nature that in a new trial it would probably produce an acquittal." Id.

### B.      JUDGE BROWNING HAD NO REASON TO RECUSE HIMSELF

Heijnen states in his motion that the presiding judge should have recused himself before trial, because he had a "(potential) conflict of interest." See Motion for new trial and change venue at 1. Heijnen cites the Court's July 5, 2005 letter to the parties and counsel. See id. In his objections to the presentence report, Heijnen is more direct, stating the Judge had a conflict of interest. Heijnen states that the Judge had a personal reason to resolve the issue in the light most favorable to his family, because his daughter attends Hope, whereby the Judge would be seen as the hero who vindicates, regardless whether the charges against Heijnen were correct. Heijnen states that the Court knew all these facts in February 2005. See Response to presentence report including objections and comments, filed July 26, 2005 (Doc. 181).

Contrary to Heijnen's assertion, the Court did not know all the victims before trial. The Court took precautions before trial to avoid any potential conflict of interest arising from his acquaintance associated with Hope. The Court conscientiously advised the parties that it needed to know about any individuals associated with Hope that might be involved in the trial. Nothing before trial suggested to the Court that there was a conflict of interest. Also, Hope itself is not involved, and with the exception of the one teacher that no longer works there, the Court is not aware of anyone associated with Hope being involved except parents. Finally, the Judge's daughter graduated over two years ago, attends college in Lubbock, Texas, and, from what the Court could tell from the evidence at trial, appeared a little younger than most of the children of the parents that invested with Heijnen. In any case, there is not a sound basis to grant a new trial, because the Judge would not

-8-

have had a good reason to recuse himself and not perform his duty before or during trial.

Heijnen has not presented authority for the proposition that the possibility or, in some cases, actuality the Judge may have met or had contact with some individuals associated with the school rendered the trial unfair. A judge's mere acquaintance with a party or witness, or even a victim, is not sufficient reason to call into question the judge's impartiality. See David v. City and County of Denver, 101 F.3d 1344, 1350-51 (10th Cir. 1996) (concluding that a judge did not have to recuse himself even though he had contacts and relationships with several of the defendants); United States v. Kehlbeck, 766 F. Supp. 707, 712 (S.D. Ind. 1990) ("[A] judge's mere acquaintance with a party or witness is not sufficient to call into question that judge's impartiality."); Network Inc., v. ESPN, Inc., 767 F. Supp 1077, 1079 (D. Colo. 1991) ("Mere allegations of a social relationship between a judge and a litigant in his court are not sufficient grounds for disqualification."); Laxalt v. McClatchy, 602 F. Supp. 214, 217 (D. Nev. 1985) ("A judge is not expected to live in isolation. Through the years, he is bound to have developed many business and personal contacts in the community . . ." ). The Court can find no legal authority for the proposition that a judge must recuse himself or herself because of a relationship that is at most a passing social acquaintance.

The Judicial Code of Conduct Canon 3, provides that "A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned." Canon 3 also sets out a list of instances when a judge should disqualify himself or herself. None of the instances listed in the Code require recusal in this case.

A reasonable person knowing all of the facts concerning this case would not believe the Judge's impartiality would be affected. At most, he is an acquaintance of the Clarks, although he has in the past known their daughter better. He believes that he has not seen or talked to them in at least

a year. The Court is mindful of its obligation to not recuse unless its impartiality can be reasonably questioned. See United States of America v. Greenspan, 26 F.3d at 1051. Given that this is a pro se case, which makes the case inherently difficult, the Court is particularly reluctant to recuse itself in the midst of a trial or post-trial proceedings, and transfer a pro se criminal case to a busy colleague in a busy district, unless the grounds for questioning its impartiality are reasonable. Here, where no reasonable person would question the Judge's impartiality, the Judge has an obligation not to recuse himself. The Court does not believe under the facts and circumstances, its impartiality can be reasonably questioned.

### III.   THE COURT WILL PROCEED WITH SENTENCING.

The Court will preside over the sentencing of Heijnen. Although the Judge may have met, or has had a passing social acquaintance with some of the victims to whom the Court may be ordering restitution, there is no basis for recusal. As discussed previously a reasonable person knowing all of the present facts and circumstances would not believe the Judge to be partial or biased. In addition, at least one court has found that a Judge may conduct a sentencing even though he may be ordering restitution to people in whom he has an interest. See United States v. Lauersen, 348 F.3d 329, 336-37 (2nd Cir. 2003)("[W]e believe that recusal is required only where the extent of the judge's interest in the crime victim is so substantial, or the amount that the victim might recover as restitution is so substantial, that an objective observer would have a reasonable basis to doubt the judge's impartiality.") (vacated, remanded on other grounds by Lauersen v. United States 125 S. Ct. 1109 (2005)). Here, the Judge has neither an interest in, nor more than a passing relationship, with any of the victims to whom he may be ordering restitution at the sentencing. Because there is no reasonable basis for the Judge to recuse himself, he will preside over the sentencing of Heijnen.

**IT IS ORDERED** that the Defendant's Motion for new trial and change of venue is denied.

```
_____
UNITED STATES DISTRICT JUDGE
```

*Counsel:*

David C. Iglesias
  United States Attorney for the
    District of New Mexico
Jonathon M. Gerson
Stephen R. Kotz
  Assistant United States Attorneys
Albuquerque, New Mexico

*Attorneys for the Plaintiff*

Antonius Maria Heijnen
Torrance County Detention Center
Estancia, New Mexico

*Defendant pro se*

Ann Steinmetz
Albuquerque, New Mexico

*Stand-by Counsel for the Defendant*