## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                        No. CR 03-2072 JB

ANTONIUS MARIA HEIJNEN and
ELIZABETH A. PERRAGLIO,

        Defendants.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the United States' Motion for Admission of Co-Conspirator Statements Pursuant to Fed. R. Evid. 801(d)(2)(E), filed January 28, 2005 (Doc. 78). The Court held an evidentiary hearing on this motion on February 16, 2005.  The primary issues are whether: (i) the Supreme Court of the United States' decision in Crawford v. Washington, 541 U.S. 36 (2004), precludes admission of co-conspirator statements that the United States seeks to admit pursuant to rule 801(d)(2)(E) of the Federal Rules of Evidence; and (ii) the statements sought to be admitted meet the applicable co-conspiracy test under rule 801(d)(2)(E).  Because the Court concludes that the three statements the United States seeks to introduce are not testimonial, and because the evidence otherwise meets the requirements for admission of co-conspirator statements under rule 801(d)(2)(E), the Court will grant the United States' motion.

### PROCEDURAL BACKGROUND

The United States, pursuant to rule 801(d)(2)(E), moves the Court to admit co-conspirator statements that Heijnen's co-conspirators made during the course of and in furtherance of the conspiracy.  The United States' motion seeks to admit the following three categories of co-

conspirator statements:

1.   Statements that co-defendant Maria Carmen Patron Rodriguez made in conversation with Father Angelo Arcilla, a witness, in the Spring of 2001.  These statements occurred in February, April, and May, 2001 and were allegedly made in furtherance of and to facilitate the scheme to acquire funds from the victim Carmelite Sisters.

2.   Statements that co-defendant Elizabeth Perraglio made in conversation with Special Agent James Maes, acting in an undercover capacity, in May 2001; specifically, these conversations occurred from on or about May 4, 2001 through May 18, 2001.  In those conversations, co-defendant Perraglio allegedly offered fraudulent investments to Maes.

3.   Correspondence from Codata, a German company, to Arcilla, acting on the Carmelite Sisters' behalf, in May 2001.  The United States alleges that this correspondence was delivered to Arcilla in an effort to complete acquisition of funds from the Carmelite Sisters.  These statements occurred from approximately May 16, 2001 through May 31, 2001.

Heijnen did not file a response to this motion.  The Court held a two-hour evidentiary hearing on this motion on February 16, 2005.  At that hearing, Maes testified about the proposed statements. The United States introduced four exhibits.  See Clerk's Minutes, filed February 23, 2005 (Doc. 100). The Court also listened to oral argument on the United States' motion.

At the conclusion of the hearing, the Court took the motion under advisement, but indicated that the United States had shown, by the required quantum of proof, that: (i) a conspiracy existed; (ii) both the declarants and Heijnen were members of the conspiracy; and (iii) the proposed statements were made during the course of, and in furtherance of, the conspiracy.  See Transcript of Hearing at

77:5-13 (taken February 16, 2005).[1]  Heijnen's standby counsel and the Court, however, raised

concerns about the applicability, if any, of Crawford v. Washington.  See id. at 58:17-59:4; 62:14-20.

The Court inquired about the general applicability of Crawford to rule 801(d)(2)(E) and to

all of the statements that the United States identified in its motion, but expressed particular concern

about the second category of statements, namely, the statements that Perraglio made to Maes.  See

id. at 62:14-20, 77:13-16.  The Court asked whether the admission of Perraglio's statements to Maes,

through Maes' testimony, might violate the Confrontation Clause of the Sixth Amendment to the

United States Constitution.  The United States, two days after the hearing, submitted a Supplemental

Memorandum in Support of Motion for Admission of Co-Conspirator Statements Pursuant to Fed.

R. Evid. 801(d)(2)(E), filed February 18, 2005 (Doc. 98).

## LAW ON CO-CONSPIRATOR STATEMENTS

Rule 801(d)(2)(E) of the Federal Rules of Evidence provides that a statement is not hearsay

if it is "a statement by a coconspirator of a party during the course of and in furtherance of the

conspiracy."  "Co-conspirator statements are not considered hearsay under Rule 801(d)(2)(E) and

may properly be admitted if the court finds: '1) a conspiracy existed; 2) both the declarant and the

defendant against whom the declaration is offered were members of the conspiracy; and 3) the

statement was made in the course of and in furtherance of the conspiracy.'"  United States v. Eads,

191 F.3d 1206, 1210 (10th Cir. 1999)(quoting United States v. Caro, 965 F.2d 1548, 1557 (10th Cir.

1992)).  For purposes of admission under rule 801(d)(2)(E), a party offering co-conspirator

statements "must prove these facts by a preponderance of the evidence."  United States v. Falls, 90

---

[1]  The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

Fed. Appx. 351, 356 (10th Cir. 2004). "The contents of the statement shall be considered but are not alone sufficient to establish . . . the existence of the conspiracy and the participation therein of the declarant and the party against whom the statement is offered under subdivision (E)." Fed. R. Evid. 801(d)(2).

**LAW ON OUT-OF-COURT STATEMENTS**

**1.**      **<u>Crawford v. Washington</u>.**

The Sixth Amendment's Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. In <u>Crawford v. Washington</u>, 541 U.S. 36 (2004), the United States Supreme Court considered whether certain out-of-court statements violate the Confrontation Clause. The Supreme Court distinguished between testimonial and non-testimonial statements, holding that the Sixth Amendment is primarily concerned with testimonial hearsay. <u>Id.</u> at 50-53. <u>See</u> <u>McKinney v. Bruce</u>, 125 Fed. Appx. 947, 950 (10th Cir. February 7, 2005). Crawford indicates that testimonial statements may be admitted "only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." <u>Crawford v. Washington</u>, 541 U.S. at 59. <u>See</u> <u>McKinney v. Bruce</u>, 125 Fed. Appx. at 950. Non-testimonial statements, however, do not implicate the Confrontation Clause. Non-testimonial statements continue to be determined under the two-part test that the Supreme Court established in <u>Ohio v. Roberts</u>, 448 U.S. 56 (1980). <u>See</u> <u>McKinney v. Bruce</u>, 125 Fed. Appx. at 950.

**2.**      **<u>Definition of Testimonial Statements</u>.**

In <u>Crawford v. Washington</u>, the Supreme Court left "for another day any effort to spell out a comprehensive definition of 'testimonial.'" 541 U.S. at 68. It, however, indicated that the term

-4-

applied "at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations."  Id.

The out-of-court statements at issue in Crawford v. Washington involved statements made during the course of an interrogation.  In that case, the State sought to introduce statements that the defendant's wife made to police during an interrogation.  See id. at 38-39.

The Court noted the variations of the "core class of 'testimonial' statements" to be: (i) "*ex parte* in-court testimony or its functional equivalent -- that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially"; (ii) "extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions"; and (iii) "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial."  Id. at 51-52.

### 3.    Admissibility of Non-testimonial Statements Under Ohio v. Roberts.

"Under Roberts, a statement is admissible without confrontation of the witness at trial, if the witness is unavailable and the witness's statement 'bears adequate indicia of reliability.'"  McKinney v. Bruce, 125 Fed. Appx. at 949 (quoting Ohio v. Roberts, 448 U.S. at 66).  "A statement bears adequate indicia of reliability if it falls within a 'firmly rooted hearsay exception . . . .'"  Id.

"[U]navailability, [is] not required . . . when the hearsay statement is the out-of-court declaration of a co-conspirator."  Bourjaily v. United States, 483 U.S. 171, 182 (1987)(citing United States v. Inadi, 475 U.S. 387 (1986)).  "[N]o independent inquiry into reliability is required when the evidence falls within a firmly rooted hearsay exception," including the co-conspirator exception.

Bourjaily v. United States, 483 U.S. at 183.

**4.**   **Co-Conspirator Statements Made in Furtherance of a Conspiracy Are Non-testimonial for Crawford Purposes.**

As the United States Court of Appeals for the Third Circuit noted in United States v. Hendricks, 395 F.3d 173 (3d Cir. 2005), the Supreme Court in Crawford v. Washington cited a case in which co-conspirator statements, made in furtherance of a conspiracy to a confidential informant, were admitted at trial over the defendant's Confrontation Clause objection.  See 395 F.3d at 182-83. Justice Scalia referenced Bourjaily v. United States, 483 U.S. 171, in which co-conspirator statements were offered pursuant to rule 801(d)(2)(E), as an example of a case in which statements were admitted against the defendant despite the lack of a prior opportunity for cross examination.  See Crawford v. Washington, 541 U.S. at 58.  Justice Scalia stated: "Even our recent cases, in their outcomes, hew closely to the traditional line. . . .  And Bourjaily v. United States, 483 U.S. 171, 181-184 . . . (1987), admitted statements made unwittingly to an FBI informant after applying a more general test that did *not* make prior cross-examination an indispensable requirement."  Crawford v. Washington, 541 U.S. at 58 (emphasis in original).  The Supreme Court did not expressly overrule Bourjaily v. United States.  Id.

Courts, post-Crawford, have found that statements made by co-conspirators during the course of and in furtherance of the conspiracy are not testimonial and do not violate the Confrontation Clause within the meaning of Crawford.  See United States v. Arriola-Perez, 137 Fed. Appx. 119, 130 n.8 (10th Cir. 2005)(rejecting Crawford argument in a footnote by stating "[h]ere . . . we are considering out-of-court statements made in furtherance of a conspiracy, which have historically been considered nontestimonial . . . ."); see also United States v. Hansen, Nos. 03-1331, 05-1414, 2006

-6-

U.S. App. LEXIS 824, at *16 (1st Cir. January 13, 2006)("[T]he challenged statements are nontestimonial because they are either co-conspirator statements made during the course of and in furtherance of the conspiracy, or casual remarks which the declarant would not reasonably expect to be available for use at a later trial."); United States v. Allen, 425 F.3d 1231, 1235 (9th Cir. 2005)("[C]o-conspirator statements are not testimonial and therefore beyond the compass of Crawford's holding."); United States v. Jenkins, 419 F.3d 614, 618 (7th Cir. 2005)("Crawford did not change the rules as to the admissibility of co-conspirator statements."); United States v. Canady, 139 Fed. Appx. 499, 501 (4th Cir. 2005)("The statements at issue here were not testimonial, even under the broadest interpretation of that term, as [the co-conspirator] clearly did not realize that his statements to the informant were going to be used against him at trial."); United States v. Hendricks, 395 F.3d at 183-84 ("[W]e conclude that the . . . coconspirator portions of the disputed [confidential informant] conversations are nontestimonial and thus, assuming compliance with the Federal Rules of Evidence, are admissible."); United States v. Logan, 419 F.3d 172, 178 (2d Cir. 2004)("In general, statements of co-conspirators in furtherance of a conspiracy are non-testimonial."); United States v. Robinson, 367 F.3d 278, 292 n.20 (5th Cir. 2004)("As applied to the present case, [the constitutionality of rule 801(d)(2)(E)] is not called into doubt by, Crawford v. Washington, because the statement challenged as hearsay was made during the course of the conspiracy and is non-testimonial in nature."); United States v. Reyes, 362 F.3d 536, 541 n.4 (8th Cir. 2004)("Crawford does not support [the defendant's argument] . . . because co-conspirator statements are nontestimonial.").  The Court has found no Circuit that has taken a contrary view.

Consistent with the Supreme Court's description of testimonial statements as including, at a minimum, prior testimony and police interrogations, the United States Court of Appeals for the Tenth

Circuit, the First Circuit, the Second Circuit, and others view <u>Crawford</u>'s reach as limited to statements that the declarant knows are made to the court or to the police authorities in a formal way, and that the declarant may reasonably expect them to be used in prosecutorial proceedings.  <u>See</u> <u>United States v. Summers</u>, 414 F.3d 1287, 1302 (10th Cir. 2005); <u>United States v. Hansen</u>, 2006 U.S. App. LEXIS 824, at *16; <u>United States v. Stewart</u>, 433 F.3d 273, ___, Nos. 04-3953(L)-cr, 04-4081(Con)-cr, 2006 U.S. App. LEXIS 271, at *34 (2d Cir. 2006)("The types of statements cited by the Court as testimonial share certain characteristics; all involve a declarant's knowing responses to structured questioning in an investigative environment or a courtroom setting where the declarant would reasonably expect that his or her responses might be used in future judicial proceedings.")(quoting <u>United States v. Saget</u>, 377 F.3d at 228).

## ANALYSIS

The United States has shown, by a preponderance of the evidence, that the alleged conspiracy existed when the proposed statements were made, the Defendant was a participant in the conspiracy, and the proposed statements were made during the course of and in furtherance of the conspiracy. Additionally, the statements here are not testimonial in nature, and are therefore not precluded from admission by <u>Crawford</u>.

## I.    THE STATEMENTS MEET RULE 801(d)(2)(E)'s REQUIREMENTS.

At the evidentiary hearing on February 16, 2005, the United States proved, by a preponderance of the evidence, that: (i) the alleged conspiracy existed at the time the co-conspirators made the statements; (ii) Heijnen participated in the conspiracy; and (iii) the statements were made in furtherance of the conspiracy.  <u>See</u> <u>Arnott v. United States</u>, 464 U.S. 948, 948 (1983); <u>United States v. Petersen</u>, 611 F.2d 1313, 1330-31 (10th Cir. 1979)(listing the above elements as required

for admission of co-conspirator statements).

> **A.  THE UNITED STATES HAS PRESENTED SUFFICIENT EVIDENCE THAT ESTABLISHES THE ALLEGED CONSPIRACY'S EXISTENCE, AS WELL AS HEIJNEN'S CONNECTION TO THE CONSPIRACY.**

While the Superceding Indictment does not name Codata as a co-defendant, the United States presented evidence at the hearing on February 16, 2005 sufficient to show, by a preponderance, that Codata and its agents were co-conspirators with Heijnen, Perraglio, and Patron Rodriguez.

Maes testified that he met with Daniel Merritt and was told that Perraglio was married to Heijnen and that she was one of the officers of Ruwach International.  See Transcript of Hearing at 11:1-19.  Merritt gave Maes a cellular telephone number, which Maes called and Perraglio answered the phone number claiming that she was "with Ruwach International."  Id.  Maes also testified that Perraglio, after Maes told her he was interested in investing, told Maes that Heijnen was her husband and that he could multiply money.  See id. at 12:1-10.

Perraglio told Maes that Heijnen was president of the corporation, and that the corporation was registered with the City of Rio Rancho, Maes could "check them out through the Better Business Bureau, and that [Maes'] money was safer" with Ruwach International than with a bank.  Id. at 12:11-21.  Perraglio told Maes that he would get a rate of return of 75% on his money within 6 months.  See id. at 13:1-5.  Maes also met with Perraglio and Heijnen together where Heijnen told Maes that, if Maes invested, he would get a rate of return of 200% in six months.  See id. at 14:1-4. At that meeting, Maes testified that Perraglio and Heijnen were "both together and they were both talking about these loan agreements."  Id. at 14:10-11.

The United States introduced into evidence the transcript of the telephone conversation between Maes and Perraglio which confirms Maes' testimony.  See Transcript of Telephone

Conversation with Liza Perraglio on May 7, 2001 at 1-5, 7-12, 14.  Maes had subsequent short conversations with Perraglio where they discussed investments, loan agreements, and $25,000 that Maes "was to invest."  Transcript of Hearing at 16:6-15.

Maes testified that, in his investigations he learned, that $500,000 was wired from an account belonging to the Carmelite Sisters of the Sacred Heart in Plano Texas and deposited into a Ruwach International checking account.  See id. at 17:1-11.  Maes interviewed Father Arcilla regarding this transfer.  See id. at 17:20-22.  Father Arcilla told Maes that Patron was a director of Ruwach International, and that Patron was the go between in the $500,000 investment that the Carmelite Sisters had made through Ruwach International.  See id. at 18:3-13.

Father Arcilla's grand jury testimony was read into the record at the hearing.  See id. at 18:14-19:17.  Father Arcilla testified: (i) "I heard Ruwach [I]nternational from the Miami office which was headed by director Mary Carmen Patron"; (ii) "she told me that Ruwach International is an investment company duly registered in New Mexico and that they have been very helpful in charitable organizations, projects, that sort of thing"; (iii) "she told me that Ruwach International can provide guarantees from banks in Europe, and the guarantees from banks in Europe are something you can hold onto, or you must sell it to institutions that would buy those guarantees from the bank.  And the next thing you need to do is go back again to Ruwach International and buy in larger quantities"; (iv) when asked about a rate of return, "I think she started with 76 percent of the face value of the value of the notes.  She did not indicate the period of time but it depended on Antonius Heijnen"; (v) "she told me that Antonius Heijnen was the decision maker of this whole thing"; (vi) he was told that $500,000 would be needed to take advantage of the investment; (vii) when asked if "by the Miami office you're talking about Mary Carmen Patron," answered, "yes"; and (viii) when asked "once you

-10-

completed raising the $500,000 did you get back in touch with her," answered "[y]es, and she gave me the documents that needed to be prepared and be sent to them like an application."  Transcript of Grand Jury Proceedings at 27:1-2, 30:3-6, 30:25-31:6, 31:10-25, 32:1-4, 35:18-24, 36:3-6.  Maes also testified that, within one day of the Carmelite Sisters investing in Ruwach International, $35,000 was wired to Patron, and that Patron had indicated to Maes that the money was basically a commission.  See id. at 30:5-25.

Maes testified that a wire transfer for $150,000 was made to Codata the day after the $500,000 from the Carmelites was deposited.  In addition, the United States introduced a "comfort letter" from Codata to Father Arcilla.  Transcript of Hearing at 26:3-27:5; Letter from Uwe Damerow, Director of Codata, to Reverend Angel Vicento Arcilla ("Letter from Damerow to Arcilla") at 1 (dated May 16, 2001).  Maes testified that this letter was a "comfort letter" and helped serve the purpose of comforting the Carmelites in investing their funds.  Transcript of Hearing at 26:6-27:16.  One of Codata's directors signed the letter, which referenced a bank guarantee to be purchased, indicated that the $500,000 would be turned into $694,000, and Maes testified that the letter's purpose was to give the Carmelite sisters comfort that their funds were going to be raised from $500,000 to $700,000.  See Transcript of Hearing 26:3-27:5; Letter from Damerow to Arcilla at 1.  Maes testified also that the "$150,000 wired to Germany [was] for the purchase of [] Codata." See id. at 28:21-29:18.

All of the above evidence is sufficient to show, by a preponderance of the evidence, that a conspiracy existed and that Heijnen was connected to the conspiracy.

**B.    THE UNITED STATES HAS PRESENTED SUFFICIENT EVIDENCE TO SHOW THAT THE CO-CONSPIRATORS MADE THE STATEMENTS IN THE COURSE OF AND IN FURTHERANCE OF THE CONSPIRACY.**

The evidence presented at the hearing was also sufficient to show, by a preponderance of the evidence, that the statements were made in the course of and in furtherance of the conspiracy. The conversation that Maes had with Perraglio shows that she was working closely with Heijnen, she answered the phone for Ruwach International, she represented that Heijnen could take money and invest it and deliver a 75% return, and she told Maes that investing money with Ruwach International was safer than investing money with a bank. The statements show an intent to further the conspiracy.

The statements that Patron made to Father Arcilla were also made in the course of and in furtherance of the conspiracy. Father Arcilla testified before the Grand Jury that Patron told him that Ruwach International could provide guarantees from banks in Europe, that the guarantees from banks in Europe were guarantees he could hold, or that he could sell them to institutions that would buy them from the bank, and that he could go back to Ruwach International and buy in larger quantities. Patron also testified that Antonius Heijnen was the decision maker of the whole thing, that $500,000 was needed to take advantage of the investment, and that, once Father Arcilla raised the $500,000, he was to get back in touch with Patron. These statements were made in the course of and in furtherance of the conspiracy.

Finally, Codata sent Father Arcilla a "comfort letter" indicating to the Carmelite Sisters that their funds of $500,000 would become $700,000. These statements also were made in the course of and in furtherance of the conspiracy.

II.   **CRAWFORD V. WASHINGTON DOES NOT BAR ADMISSION OF THE THREE CATEGORIES OF STATEMENTS BY CO-CONSPIRATORS THAT THE UNITED STATES SEEKS TO ADMIT AGAINST HEIJNEN.**

Crawford does not preclude admission of statements made by co-conspirators in furtherance of a conspiracy where those statements are not testimonial in nature, even if made to undercover police agents.

A.   **THE ADMISSION OF CODATA'S AND PATRON RODRIGUEZ' STATEMENTS PURSUANT TO RULE 801(d)(2)(E) WOULD NOT VIOLATE THE CONFRONTATION CLAUSE.**

A review of Justice Scalia's opinion for the Supreme court in Crawford v. Washington indicates that the use of co-conspirator's statements in furtherance of a conspiracy against co-conspirators was not among "the abuses at which the confrontation clause was directed." 124 S. Ct. at 52. See United States v. Arriola-Perez, 137 Fed. Appx. at 130 n.8. Every Circuit that has decided the issue has found that such statements are not testimonial and thus that Crawford does not preclude their admission. Accordingly, Codata's statements and Patron Rodriguez' statements, which were private communications with no government involvement, were not testimonial. Crawford does not bar their admission.

B.   **THE ADMISSION OF PERRAGLIO'S STATEMENTS TO MAES PURSUANT TO RULE 801(d)(2)(E) WOULD NOT VIOLATE THE CONFRONTATION CLAUSE.**

The Court finds that Perraglio's statements to Maes pursuant to 801(d)(2)(E) are admissible because: (i) the United States Supreme Court has not overruled Bourjaily; (ii) the Tenth Circuit's test for non-testimonial statements encompasses some statements made to undercover officers; and (iii) other Circuits have found that statements made by co-conspirators, in furtherance of a conspiracy, even to undercover officers, may be non-testimonial in nature and that Crawford does not preclude

their admission.

> **1.      The Supreme Court's Decision in Bourjaily Leads the Court to Conclude that the Admission of Statements Made to Maes do not Violate the Confrontation Clause.**

It is important not to read Justice Scalia's discussion of Bourjaily v. United States too broadly.  First, while the United States contends that Justice Scalia cited Bourjaily v. United States with approval, see Supplemental Memorandum in Support of Motion for Admission of Co-Conspirator Statements Pursuant to Fed. R. Evid. 801(d)(2)(E) at 5-6, the Court believes that his approval is not clear.  His discussion of the previous case suggests only that the outcome in Bourjaily v. United States may be close to his line.  See Crawford v. Washington, 541 U.S. at 58 ("Even our recent cases, in their outcomes, hew closely to the traditional line.")(citing Bourjaily v. United States, 483 U.S. at 181-84).  Also, the United States suggests Justice Scalia cited Bourjaily v. United States as an example of non-testimonial statements, but he did not go that far, suggesting only that the outcome was close to what his test would allow.  Crawford v. Washington, 541 U.S. at 58.

The Supreme Court in Bourjaily v. United States allowed statements that a co-conspirator made to an FBI informant.  See 483 U.S. at 173-74, 184.  The Supreme Court did not expressly overrule this case in Crawford, even though the Court specifically mentioned Bourjaily in its opinion. A district court is not the proper court to question a Supreme Court decision that the Supreme Court has not overruled.  See Lynch v. Fulks, No. 79-1244, 1980 U.S. Dist. LEXIS 16099, at *6-7 (D. Kan. December 12, 1980)("Federal District Courts do not overrule the United States Supreme Court . . . ."); cf., Summum v. Callaghan, 130 F.3d 906, 913 (10th Cir. 1997)("We are not at liberty to overrule or disregard . . . a superseding contrary decision of the United States Supreme Court.")(citing LeFever v. Commissioner of Internal Revenue, 100 F.3d 778, 787 (10th Cir. 1996)).

The court must therefore take its holding as, for the present time, surviving Crawford v. Washington.

Additionally, the Court is not aware of any court that has found that Crawford overruled Bourjaily, and several courts have found that Crawford cited Bourjaily with approval.  See e.g., United States v. Hendricks, 395 F.3d at 183 ("Indeed, the Crawford Court referenced Bourjaily as an example of a case in which nontestimonial statements were correctly admitted against the defendant despite the lack of a prior opportunity for cross-examination.")(citation omitted).

The question then is whether there is a sound basis for drawing a distinction between unwitting statements to an FBI informant in furtherance of a conspiracy and unwitting statements to a state undercover agent in furtherance of a conspiracy.  The Court does not think this distinction exists.  The defendant could not cross-examine the co-conspirator at the time of the statement in either case, and in both cases, the listener was working at the behest of the government.  It does not appear that Justice Scalia, writing for the Supreme Court in United States v. Crawford, turned his test so much on the audience as on the setting in which the out-of-court statement was made.  Here, the setting is too similar to the setting in Bourjaily v. United States to draw a meaningful distinction.  For the Court to draw such a distinction would be to draw one that federal courts have not decided to draw in the past.

### 2.      Whether a Statement Made by a Co-Conspirator is Admissible Does not Turn on Whether the Statement was Made Between Co-Conspirators.

The admissibility of co-conspirator statements does not depend on whether the statements were made between co-conspirators.  Rule 801, which defines co-conspirator statements as "not hearsay," requires only that the statements be "by a coconspirator of a party during the course and in furtherance of the conspiracy."  Fed. R. Evid. 801(d)(2)(E).  Similarly, federal courts have

-15-

permitted police officers to testify about co-conspirators' statements made to them.  See United States v. Falls, 90 Fed. Appx. 351, 356 (10th Cir. March 5, 2004)(unpublished).  That one party to the conversation is a government agent does not eliminate the conspiracy.  See id.; United States v. Mahkimetas, 991 F.2d 379, 383 (7th Cir. 1993)("It is universally held that the fact that one party to a conversation is a government agent or informer does not of itself preclude the admission of statements by the other party--if he or she is a member of a conspiracy--under Rule 801(d)(2)(E).")(citing United States v. Robinson, 956 F.2d, 1388, 1394 (7th Cir. 1992), and United States v. Mealy, 851 F.2d 890, 901 (7th Cir. 1988)).

### 3.    Definition of Testimonial.

The Supreme Court in Crawford did not define testimonial.  After considering several possible definitions, the Court found that, to decide the case at hand, it was sufficient to note that the term applied, "at a minimum . . . to police interrogations."  541 U.S. at 68.  The Court also did not define "interrogation."  The Court observed: "Just as various definitions of 'testimonial' exist, one can imagine various definitions of 'interrogation.'"  Id. at 53.  Again, the Supreme Court decided not to "select among them," holding that the statement at issue, which was "knowingly given in response to structured police questioning, qualifies under any conceivable definition."  Id.

Justice Scalia did not draw a bright-line rule that any statement to a police officer is testimonial, but he came close.  In footnote 7, he stated:

> We cannot agree . . . "that a statement might be testimonial does nothing to undermine the wisdom of one of these hearsay exceptions."  Involvement of government officers in the production of testimony with an eye toward trial presents unique potential for prosecutorial abuse -- a fact borne out time and again throughout a history with which the Framers were keenly familiar.  This consideration does not evaporate when testimony happens to fall within some broad, modern hearsay exception, even if that exception might be justifiable in other circumstances.

Id. at 56 n.7 (citations omitted).  On the other hand, if the rule is that the Confrontation Clause bars all statements to police, the Supreme Court could have said so more easily than it did.  If that is not the rule, and some statements to police are non-testimonial, then a statement that is unwittingly given to a police officer appears to be at the end of the spectrum where such statements will be admissible.

The Tenth Circuit in United States v. Summers, stated:

> We conclude that the common nucleus present in the formulations which the [Crawford] Court considered centers on the reasonable expectations of the declarant. It is the reasonable expectation that a statement may be later used at trial that distinguishes the flippant remark, proffered to a casual acquaintance, from the true testimonial statement. Certain factual circumstances surrounding an out-of-court statement give rise to just such an expectation, including formalized settings such as police interrogations, confessions, or the taking of statements under oath. We need not at this juncture define with any certainty the possible universe of circumstances that would lead an objective declarant to believe that his statement might subsequently be used in a criminal investigation or prosecution. We further reject a narrow approach that would limit testimonial statements to those made by witnesses who testify either by taking the stand in person or via government-prepared affidavits, depositions, videotapes, and the like.  Such an approach is akin to that expressly rejected by the Court in Crawford, in that it emphasizes form over substance.  Rather, we believe an objective test focusing on the reasonable expectations of the declarant under the circumstances of the case more adequately safeguards the accused's confrontation right and more closely reflects the concerns underpinning the Sixth Amendment.  Thus we hold that a statement is testimonial if a reasonable person in the position of the declarant would objectively foresee that his statement might be used in the investigation or prosecution of a crime.

United States v. Summers, 414 F.3d at 1302 (10th Cir. 2005)(citations omitted).  See also United States v. Aleman-Ramos, No. 04-1420, 2005 U.S. App. LEXIS 25641, at *12 (6th Cir. November 28, 2005)("Moreover, although the Supreme Court has not provided a precise definition for what comprises a testimonial statement, we have explained that the decisive inquiry should be whether a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the crime.")(citation and internal quotations omitted)

To determine whether any of the statements offered by the United States were testimonial in nature, under the test the Tenth Circuit articulated in Summers, the Court reviewed the transcripts of the conversation between Maes and Perraglio. The conversation between Maes and Perraglio did not resemble "structured police questioning," nor could Perraglio reasonably expect, from the circumstances, that the statements would later be used in the investigation or prosecution of a crime. United States v. Summers, 414 F.3d at 1302. The two were trying to arrange the details of a financial transaction. Although Maes asked questions during the conversations, they were to facilitate the solicitation of money and were not asked in a formal, structured manner that would have led Perraglio to expect the statements to be later used in adverse proceedings or in an investigation. See generally Transcript of Telephone Conversation with Liza Perraglio on May 7, 2001. Perraglio's statements were more like casual conversation and not testimonial in nature. While the Court need not limit "interrogation" to formal and systematic questioning, the casual conversations to which Maes testified do not have the characteristics of testimonial statements. The Court believes that the statements made by Perraglio were not testimonial in nature.

Also, Perraglio's purpose in making the statements indicates that her statements are not testimonial. Perraglio was attempting to advance the conspiracy by negotiating the sale of financial instruments. She was not making a formal statement, and she thought she was speaking to a potential customer. See id.

### 4.    Other Circuits and Undercover Police Agents.

The few courts that have addressed the specific issue whether a co-conspirator statement made to an undercover officer is inadmissable under Crawford have found that Crawford does not preclude such statements. In United States v. Reyes, 362 F.3d 536 (8th Cir. 2004), the United States

Court of Appeals for the Eighth Circuit dealt with co-conspirator's out-of-court statements that implicated the defendants. "[B]oth defendants complain[ed] that introducing these statements through government agents violated their Confrontation Clause rights because when the defendants tried to call the co-conspirator as a witness, he invoked the Fifth Amendment, and thus the defendants could not question him." Id. at 539.

Based on information from an informant, a Missouri drug task force dispatched undercover officers to investigate drug activity. See id. "To link the defendants to the conspiracy, the government offered statements that Caasimor Gonzalez made to undercover agents while the conspiracy was ongoing. The grand jury indicted Gonzalez as part of the conspiracy, but he pleaded guilty before the defendants' trial, though he had not been sentenced at the time of their trial. The government introduced Gonzalez' out-of-court statements through agents who testified to what Gonzalez told them about the defendants." Id. at 540.

The Eighth Circuit stated that the defendants' arguments found "no support in the Confrontation Clause." Id.

> The defendants were able to (and did) cross-examine the government agents who recounted Gonzalez's statements. So the only way the defendants can prevail under the Confrontation Clause is if they can show they had a right to cross-examine Gonzalez *due to the agents' testimony recounting his statements*. But no such right existed because Gonzalez's statements were nontestimonial . . . .

Id. (emphasis in original). The defendant cited the recent Crawford v. Washington decision to support his Confrontation Clause, but the Eighth Circuit rejected this argument: "Crawford does not support his argument, however, because co-conspirator statements are nontestimonial. Id. at 541 n.4 (citation omitted).

In Illinois v. Redeaux, 823 N.E.2d 268 (Ill. App. 2005), the defendant contended that the trial

-19-

court denied him his right to confront the witnesses against him when it allowed the state to introduce tape-recorded conversations between Robert Johns and an undercover officer that referred to the defendant.  See id. at 269.  At trial, Rafael Osorio testified that he was an agent with the Du Page Metropolitan Enforcement Group.  See id.  He was working undercover trying to arrange to purchase a kilogram of cocaine from Johns.  See id.  In some of the conversations, Johns talked about his sources and stated that his source wanted to be present for the transaction, and Osorio told Johns that the source could sit in the car while Johns conducted the transaction.  See id.  At the transaction, police arrested Johns and the defendant, a passenger in the car.  See id.

On appeal, the defendant argued that Johns' conversation with the agent consisted of testimonial hearsay, which the court should not have admitted.  See id. at 270.  Specifically, the defendant contended that Johns' statements were inadmissible because Osorio "interrogated" Johns. Id. at 271.  The Illinois appellate court noted that the Supreme Court in Crawford v. Washington did not define "interrogation" and instead held that the statement under consideration was testimonial because it was given in response to "structured police questioning."  Illinois v. Redeaux, 823 N.E.2d at 270 (citing Crawford v. Washington, 541 U.S. at 68-69).  The Illinois Appellate court stated: "Indeed, the common definition of 'interrogate' is 'to question formally and systematically.'"  Illinois v. Redeaux, 823 N.E.2d at 271.

The Illinois court then analyzed whether Osorio's conversations with Johns were an interrogation:

> Here, nothing in the conversations between Osorio and Johns even came close to "structured police questioning."  The two were merely trying to arrange the details of a drug transaction. Although Osorio asked questions during the conversations, they were merely to facilitate the sale of the cocaine. Osorio did not press Johns for information beyond what was necessary for that purpose. Notably, although Johns

repeatedly referred to his "source," Osorio did not question him about the source's identity. Johns' statements were more like casual conversation and not in response to "interrogation."

Id.

The Illinois Appellate court read United States v. Reyes, 362 F.3d 356, as rejecting claims that Crawford v. Washington barred co-conspirators' statements and finding the statements were nontestimonial. The Illinois Appellate court noted that, "in Reyes, as here, the coconspirator's statements were made to an undercover agent." Illinois v. Redeaux, 823 N.E.2d at 272 (citing United States v. Reyes, 362 F.3d at 540). The defendant in Illinois v. Redeaux argued that the analysis in United States v. Reyes was flawed because it did not discuss whether the agents obtained the statements through "interrogation." Id. The Illinois Appellate court reasoned, however, that, because the Eight Circuit "specifically found that the statements were nontestimonial, the court must have implicitly concluded that they were not the result of an interrogation." Id.

Courts, post-Crawford, have continued to hold that co-conspirator statements made to confidential informants are not testimonial in nature. See United States v. Canady, 139 Fed. Appx. at 501 (4th Cir. 2005); United States v. Saget, 377 F.3d at 229-30 (2nd Cir. 2004)("[W]e conclude that a declarant's statements to a confidential informant, whose true status is unknown to the declarant, do not constitute testimony within the meaning of Crawford."); United States v. Honken, 378 F. Supp. 2d 928, 957 (N.D. Iowa 2004)("As this court reads Crawford, it is not simply the status of the hearer as a police officer or other government agent that makes statements to such government agents 'testimonial' statements. Rather, this court reads Crawford to examine the expectation and belief of the declarant to determine whether or not the statement is 'testimonial,' not the expectation or belief of the hearer.").

-21-

The Court, again, does not believe that the difference between an undercover officer and a confidential informant has constitutional significance under Crawford.  In both situations, the statements by the co-conspirator are made in the absence of the reasonable expectation that the statements will later be used in a formal proceeding or investigation, and in both situations the hearer is obtaining information on behalf of the government.  As the Tenth Circuit stated in United States v. Summers, "a statement is testimonial if a reasonable person in the position of the declarant would objectively foresee that his statement might be used in the investigation or prosecution of a crime." 414 F.3d at 1302.  Here, the statements made by Perraglio and surrounding circumstances do not indicate an objective foreseeability by Perraglio that the statement might be used in an investigation or prosecution of a crime.  Thus, the statements made by Perraglio are not testimonial, and Crawford therefore does not preclude them.

Because the Court finds that: (i) all of the proposed statements were made by Heijnen's co-conspirators, at the time of the conspiracy, and during the course of and in furtherance of the conspiracy; and (ii) the statements in question are nontestimonial in nature, the Court will admit the statements pursuant to 801(d)(2)(E).

**IT IS ORDERED** that the United States' Motion for Admission of Co-Conspirator Statements Pursuant to Fed. R. Evid. 801(d)(2)(E) is granted.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

David C. Iglesias
    United States Attorney for the
      District of New Mexico
Jonathon M. Gerson
Stephen R. Kotz
    Assistant United States Attorneys
Albuquerque, New Mexico

        *Attorneys for the Plaintiff*

Antonius M. Heijnen,
    Federal Detainee
Torrence County Detention Center
Estancia, New Mexico

        *Pro se Defendant*

Ann Steinmetz
Albuquerque, New Mexico

        *Standby Attorney for Defendant*
            *Antonius M. Heijnen*

Penni Adrian
Adrian and Associates, P.C.
Albuquerque, New Mexico

        *Attorney Defendant Elizabeth A. Perraglio*